IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVEN RUSSELL,                          §
TDCJ-CID NO.760259,                      §
        Petitioner,             §
                                §
                                §
v.                                       §       CIVIL ACTION NO. H-05-2519
                                §
NATHANIEL QUARTERMAN,[1] Director,       §
Texas Department of Criminal Justice,    §
Correctional Institutions Division,      §
        Respondent.            §

OPINION ON DISMISSAL

      Petitioner Steven Russell, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2000 state court felony conviction for escape. Respondent has filed a motion for summary judgment (Docket Entry No.19), to which petitioner has filed a motion for an evidentiary hearing. (Docket Entry No.20). For the reasons to follow, the Court will grant respondent's motion and deny petitioner relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      Petitioner was indicted by a Walker County, Texas grand jury of third degree felony offense escape, enhanced by two prior felony convictions. (Docket Entry No.8, part 36, pages 26-27). A jury in the 278th District Court of Walker County, Texas heard evidence of the following in cause number 19,856-C:

      [1]    Petitioner named Douglas Dretke, Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), as respondent.  On June 1, 2006, Nathaniel Quarterman succeeded Dretke as Director; therefore, the Court ORDERS the Clerk to substitute Nathaniel Quarterman as respondent in this case.

> Steven Russell was serving a prison sentence in the Estelle Unit of the Texas Department of Criminal Justice, Institutional Division. On December 13, 1996, in the infirmary restroom, another inmate noticed Russell change into doctor's clothing. Russell, dressed as a physician, left the unit and was given a ride to a local Denny's Restaurant and from there, to a hospital in Houston.  Russell was found in Biloxi, Mississippi on December 23, 1996, and returned to Texas.

*Russell v. State*, 90 S.W.3d 865, 868 (Tex. App.-San Antonio, 2002, pet. ref'd).  A jury found petitioner guilty and his enhancement paragraphs true; on August 17, 2000, the jury sentenced petitioner to ninety-nine years confinement in TDCJ-CID.  (Docket Entry No.8, part 38, page 38).

On September 25, 2002, petitioner's conviction was affirmed on direct appeal by the Fourth Court of Appeals for the State of Texas ("Fourth Court of Appeals").  Petitioner filed a petition for discretionary review, challenging the Fourth Court of Appeals's opinion that the state district court did not err by:

1.  Expanding the statutory definition of escape to include improper release or release by mistake;

2.  Concluding that a pen packet without a judgment or a sentence is legally and factually sufficient to prove the existence of a prior conviction;

3.  Finding no evidence of prejudice, despite the presumptive prejudice caused by the length of the delay and testimony supporting a finding of prejudice;

4.  Failing to consider the length of the delay in analyzing petitioner's speedy trial claim;

5.  Concluding that the presumption of prejudice is rebutted by the failure to demonstrate prejudice, despite evidence that raises at least prima facie evidence of prejudice;

6.  Concluding the State was not required to rebut the presumption of prejudice; and,

7.  Concluding the testimony of witnesses lost because of the delay was not prejudicial despite its relevance as mitigating evidence on the issue of punishment.

2

(Docket Entry No.8, part 1, pages 37-38).  The Texas Court of Criminal Appeals refused his petition for discretionary review on January 22, 2003.  *Russell v. State*, 90 S.W.3d 865 (Tex. App.–San Antonio 2002, pet. ref'd).

Petitioner filed a state application for writ of habeas corpus on August 12, 2003 (Docket Entry No.8, part 19, page 35), which the Texas Court of Criminal Appeals denied without written order January 12, 2005.  (*Id.*, page 34); *Ex parte Russell*, No.29,412-08 at cover.  He filed another state habeas application on January 10, 2005, which was denied without written order on July 27, 2005. (Docket Entry No.8, part 18, page 36); *Ex parte Russell*, No.29,412-09 at cover.

Petitioner filed the pending federal petition for a writ of habeas corpus on July 7, 2005, seeking federal habeas relief on the following grounds:

1.   The evidence is legally insufficient to support his conviction;

2.   The evidence is factually insufficient to support his conviction;

3.   He was denied his right to a speedy trial;

4.   His trial counsel was ineffective;

5.   His sentence should not be cumulative to his sentences in cause numbers 723526 and 727973; and,

6.   He is entitled to jail time credit from December 23, 1996, to August 17, 2000.

(Docket Entry No.1).

Respondent moves for summary judgment on the following grounds:

1.   Petitioner has not demonstrated that the state court's adjudication of his legal insufficiency-of-the-evidence claim, speedy trial claim, and ineffective assistance-of-counsel claim were unreasonable;

2.   Petitioner's factual insufficiency claim and his cumulation-of-sentences claim do not present a constitutional issue; and,

3.   Petitioner's claim for jail time credits is moot.

(Docket Entry No.19).

II.   STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at  28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review, which the Texas Court of Criminal Appeals refused, and two state habeas corpus applications, which the Texas Court of Criminal Appeals denied without written order.  As a matter

of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in the petition for discretionary review and state applications for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).  Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."

*Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases,"  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines*, 404 U.S. at 521.  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to

6

advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

III.    DISCUSSION

A.    State Law Claims

Respondent moves for summary judgment on grounds that two of petitioner's claims, *i.e.*, his challenge to the factual sufficiency of the evidence and his claim regarding the cumulation of sentences, do not present federal constitutional issues and should be dismissed for failure to state a claim. (Docket Entry No.19).

1.    Factual Sufficiency

Petitioner challenges the factual sufficiency of the evidence to support his conviction for escape on the grounds that the evidence showed that he was given permission to leave the prison unit and the State failed to prove that he was incarcerated upon a felony conviction. (Docket Entry No.1). Factual insufficiency is a creation of Texas law whereby the reviewing court scrutinizes the fact finder's weighing of the evidence. *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002); *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Because a factual sufficiency claim is based entirely on Texas law, it will not support a claim for relief under federal habeas law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, petitioner's challenge to the factual sufficiency of the evidence will be dismissed because it fails to state a claim upon which relief may be granted.


2.    Cumulative Sentences

Petitioner claims that he was denied due process when the state district court sentenced him to a cumulative sentence. (Docket Entry No.1). Whether sentences should be served consecutively

7

or concurrently is a matter of state procedure that is not cognizable in a federal habeas petition. *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996)*; Johnson v. Beto*, 383 F.2d 197, 198 (5th Cir. 1968). Accordingly, petitioner's due process claim is subject to dismissal for failure to state a claim upon which relief may be granted.

B.     <u>Jail Time Credit</u>

Respondent also moves for summary judgement on petitioner's claim of entitlement to pre-trial jail time credits from December 23, 1996 to August 17, 2000. Respondent maintains that petitioner has presented no evidence that he was denied such time and TDCJ-CID's records show that petitioner was given 1,333 days of credit on his sentence pursuant to a judgment *nunc pro tunc* entered on August 8, 2001. (Docket Entry No.19, Exhibit A). Therefore, respondent argues, petitioner has received the relief he seeks and his jail time credit claim is moot. (Docket Entry No.19).

Petitioner contends that TDCJ-CID has not credited him with the 1,333 days of jail time he served from December 23, 1996, when he was arrested for escape, until August 17, 2000, when he was sentenced on the escape conviction. Petitioner claims that TDCJ-CID has credited him with jail time from April 28, 1998, the date he was re-indicted on the present conviction, to August 17, 2000. (Docket Entry No.1). He directs the Court to a TDCJ print-out, which shows that his 99 year sentence for escape began on April 28, 1998. (*Id.*, Exhibit D). Petitioner attached the same print-out to his state habeas application. (Docket Entry No.8, part 20, page 36). The print-out is not current; it does not reflect the *nunc pro tunc* judgment entered on August 8, 2001, from Walker County, granting petitioner credit for 1,333 days of jail time credit from December 23, 1996 through August 17, 2000. (*Id.*; Docket Entry No.8, part 21, page 19). Petitioner has not submitted a commitment data print-out that was issued after August 8, 2001, and therefore, he fails to contravene respondent's

claim that there is no evidence that TDCJ-CID has not honored the *nunc pro tunc* judgment awarding petitioner 1,333 days of jail time credit.

Accordingly, petitioner fails to show that the Texas Court of Criminal Appeals' order denying his state habeas application was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

C.      Sufficiency of the Evidence

Respondent moves for summary judgment on petitioner's challenge to the legal sufficiency of the evidence to support petitioner's conviction for escape.  (Docket Entry No.19).  Petitioner maintains that the State did not prove the elements of the offense as stated in the indictment.  (Docket Entry No.1).  Specifically, petitioner claims the State did not prove beyond a reasonable doubt that he was serving a sentence for a felony conviction at the time he escaped from TDCJ-CID, that he was in the custody of Warden Fernando Figueroa, and that he was not authorized to depart from TDCJ-CID custody.  (*Id.*).

A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319.  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.  *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).  To

determine whether the evidence is sufficient to support a state criminal conviction, the federal habeas court must look to state law for the substantive elements of the relevant criminal offense. *Jackson*, 443 U.S. at 324 n.16.

A person commits the offense of escape in Texas if he makes an unauthorized departure from custody when is he is under arrest for, charged with, or in custody pursuant to a lawful order of a court. TEX. PEN. CODE ANN. §§ 38.06(a); 38.01(2). (Vernon 2003). Escape is a felony if the offense for which the prisoner was under arrest, with which he is charged, or of which he is convicted is a felony, or if the prisoner was confined in a secure correctional facility. *Id.* § 38.06(c). The crime being the escape itself, is therefore, complete once the unauthorized departure is made. *Fitzgerald v. State*, 782 S.W.2d 876, 879 (Tex. Crim. App. 1990). Consequently, the nature and scope of custody, and what constitutes an unauthorized departure from custody, depends on the facts of each case. *Lawhorn v. State*, 843 S.W.2d 268, 270 (Tex. App.–Austin 1992), *aff'd,* 898 S.W.2d 886 (Tex. Crim. App. 1995).

A Walker County, Texas grand jury charged petitioner with the offense of felony escape, as follows, in pertinent part:

> Defendant, on or about the 13th day of December, 1996, . . did then and there intentionally and knowingly escape from the custody of Fernando Figueroa, who was then and there Warden of the Estelle Unit of the Texas Department of Criminal Justice, Institutional Division, when the defendant was convicted of the offense of escape, a felony.

Docket Entry No.8, part 21, pages 3-4). The Fourth Court of Appeals found the evidence legally sufficient to establish that petitioner committed the offense of escape. *Russell,* 90 S.W.3d at 871. The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. Because the Court of Criminal Appeals did not issue an opinion in refusing petitioner's petition for discretionary review, this Court may "look through" the Texas Court of Criminal Appeals's

unexplained refusal and evaluate the appellate court's decision regarding a federal claim.  *See*

*Bledsue,* 188 F.3d at 256.

In arriving at this conclusion, the Fourth Court of Appeals summarized the evidence presented

at petitioner's trial as follows:

> Fernando E. Figueroa was the Warden of the Estelle Unit on December 13, 1996.
> Figueroa testified that Russell was in his custody on that date and that he never gave
> Russell consent to leave the Unit.
>
> Mitchell Garrett, an inmate at TDC, knew Russell.  Garrett was in the infirmary on
> December 13, 1996.  Garrett noticed Russell in the infirmary restroom changing into
> doctor's clothing.  Garrett witnessed Russell clip an identification tag to his shirt and
> leave the infirmary.  Carl Ogle is also an inmate at TDC and was acquainted with
> Russell.  According to Ogle, he and Russell shared a prison cell.  On December 11,
> 1996, Ogle noticed Russell had collected extra necessities, including several blankets
> and extra sets of clothes.  Ogle also noticed green ink stains on Russell's blankets and
> that Russell had nine or ten felt-tip markers.
>
> Bobby Rushing lives near the Estelle Unit.  On December 13, 1996, at 5:30 a.m.,
> Rushing heard his door bell ring.  A man dressed as a doctor was at the door.  The
> man told Rushing that he had had an alcohol related accident and needed a ride into
> town.  Rushing took the man to a Denny's Restaurant at approximately 6:00 a.m.  The
> next morning, Rushing found a shirt similar to the one the man was wearing in his barn.
>
> Margie Frank Allen is a cab driver.  She testified that on December 13, 1996, she
> picked up Russell at Denny's and drove him to Hermann Hospital in Houston.
> Russell told her he was going into the hospital to get fare money, but he never returned.
>
> Christy Putnam has been a TDC guard since May of 1996.  On December 13, 1996,
> she was working at the control picket at the Estelle Unit.  Putnam remembered
> allowing a person to leave the Unit dressed in medical attire with a medical
> identification tag.  Putnam could not testify that it was Russell who left the prison unit
> disguised as a physician.
>
> Captain David Hosea runs the Regional Medical Facility at the Estelle Unit.  At 7:00
> a.m. on the morning of December 13, 1996, prison officials realized an inmate was
> missing.  After conducting a "bed book," officials discovered Russell was missing.
> After thoroughly searching the area, Russell could not be found.  Internal Affairs took
> over the search.  Ultimately, it was determined that Russell had passed through the
> control picket and out through the front gate of the Unit.
>
> Richard Voight, a corrections officer for TDC, received a phone call from the radio
> picket officer, informing him a medical employee was walking to the parking lot to

his vehicle.  Voight then observed a person in green medical attire approach his picket.  He did not, however, see where the individual went.  Voight believes he allowed an inmate to leave the premises.

John Pugh was a dog sergeant at the Estelle Unit on December 13, 1996.  Pugh conducted a search of the Unit grounds with his dog.  The dog picked up a scent, which led them to the main entrance.  The dog, however, lost the scent.

Glen Collins is a correctional officer and was supervising the fence squad at the Estelle Unit on December 17, 1996.  As they were picking up trash along the roadway, one of the inmates found an identification tag.  Collins took the tag to Sergeant Pugh. According to Collins, the tag had been altered to look like an officer's tag.

Terry Cobbs is a fugitive investigator for the TDCJ's Inspector General's office. He testified that, on December 23, 1996, a United States Marshall [sic] found Russell in Biloxi, Mississippi.  Cobbs brought Russell back to Texas from Mississippi.

A.P. Merillat, an investigator with the Special Prosecution Unit, is a fingerprint expert.  On the day of trial, Merillat took Russell's fingerprints.  Merillat compared Russell's fingerprints with another set of fingerprints contained in the pen packet of a person named Steven Russell.  According to Merillat, the fingerprints were identical. Merillat, therefore, concluded "[t]he person that I took fingerprints from here in the courtroom, ⋯, is the same person who made fingerprints in this pen packet." The State then introduced Exhibit 19, which includes information regarding Russell's prior conviction for escape.  It indicates Russell was sentenced to serve twenty years for the offense.

*Id.* at 869 -870.  The record supports the court of appeals's summation of the evidence.

1.   Unauthorized Departure

Petitioner argues that the State failed to prove that his departure from the Estelle Unit was unauthorized because two guards mistakenly allowed him to depart. (Docket Entry No.1). Petitioner claims Texas law defines escape as an unauthorized departure and does not require that the authority to depart be valid; therefore, "[a] person who departs from custody by mistake on the part of authorities does not commit the offense of escape." (Docket Entry No.1).

Federal courts apply the *Jackson v. Virginia* "standard looking to the state's substantive law, giving weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.

2000).  "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue*, 188 F.3d at 259 (quoting *Jackson*, 443 U.S. 324 n.16).

The Fourth Court of Appeals defined the term "escape" by relying upon a Texas Court of Criminal Appeal opinion that had defined escape under the Texas Rules of Appellate Procedure to mean "to get oneself free from confinement or control."  *Russell*, 90 S.W.3d at 870 (quoting *Estep v. State*, 901 S.W.2d 491, 495 (Tex. Crim. App. 1995)).  The Fourth Court of Appeals found that the *Estep* Court limited the application of the escape definition by stating, "[b]eing released from custody by someone in authority, even when such release is not authorized by law, does not constitute 'getting onself free from confinement."  *Id.* (quoting *Estep* at 495).  However, the Fourth Court of Appeals noted that the *Estep* Court' opinion had implied "that if the record showed that an 'Appellant departed from custody with awareness that the departure was not authorized (which can usually be made by setting out the circumstances of the departure),' it would be proper to conclude an individual had escaped."  *Id.* (quoting *Estep* at 495).

The Fourth Court of Appeals observed, and petitioner concedes, that prison employees permitted him to leave the Unit under the mistaken belief that he was a physician and that petitioner induced such mistaken belief by disguising himself as a physician.  *Id.* at 870-71.  The Fourth Court of Appeals concluded that because he knew he was being released improperly, petitioner may be classified as an escapee, if the remaining elements were met.  *Id.* at 871.

Petitioner fails to show that the Texas Court's definition of an unauthorized department violates clearly established federal law.  Moreover, a rational jury could conclude from the evidence admitted at trial that petitioner made an unauthorized departure from custody with knowledge that such departure was improper.

2.      Insufficient Evidence of Prior Escape Conviction

Petitioner maintains that the evidence is insufficient to show that he had previously been convicted of felony escape because the State's evidence of such conviction was deficient.  (Docket Entry No.1); *Russell*, 90 S.W.3d at 871.  Specifically, petitioner complains that State's Exhibit 19 did not contain any judgment, only a photograph, an indictment, and a cover page of an indictment. Without more, he argues, the State fails to show the existence of a valid order authorizing the warden to restrain him.  (Docket Entry No.1).

The Fourth Court of Appeals found State's Exhibit 19 to include a business records affidavit, an offense information sheet, and fingerprint records.  *Russell*, 90 S.W.3d at 871.  The Fourth Court of Appeals noted that the offense information sheet included pictures of petitioner and that it set out the offense committed-felony escape, petitioner's plea of guilty, the date the judgment was entered, and the sentence imposed.  *Russell*, 90 S.W.3d at 871.  The Fourth Court of Appeals also noted that Investigator Merillat testified that the fingerprints in Exhibit 19 matched those taken from petitioner during trial and that Warden Figuero recalled that he remembered that petitioner had a ten-year escape charge.  *Id.*  The Fourth Court of Appeals further noted that petitioner did not put on any evidence to refute testimony or evidence of  previous felony conviction for escape.  *Id.*  Based on this record, the Fourth Court of Appeals concluded the evidence was sufficient to show that petitioner had previously committed the offense of escape.  *Id.*

The record supports the Texas Court's factual findings and legal conclusion.  (Docket Entry No. 8, part 17, pages 24-28; part 14, page13; part 13, page 16).  From this record, a rational jury could have found that petitioner had been previously convicted of felony escape from the Harris County Jail at the time he escaped from TDCJ.  Petitioner fails to show that the Fourth Court of Appeals's opinion was an incorrect or unreasonable application of clearly defined federal law.

3.      Physical Custody

Petitioner also maintains that the State did not show that he was in Warden Figueroa's physical custody at the time he escaped from the Estelle Unit.  (Docket Entry No.1); *Russell*, 90 S.W.3d at 871.  Petitioner argues that because Figueroa had never seen petitioner before petitioner departed the Estelle Unit and had not ever physically restrained petitioner, petitioner was not in Figueroa's custody.  (Docket Entry No.1).

The Fourth Court of Appeals noted that "[c]ustody is not limited to actual, physical 'hands-on' restraint, but in the context of escape, is more than the right to control; it implies a degree of physical limitation, restraint, or control of the nature and scope of which depends on the facts of each case." *Russell*, 90 S.W.3d at 870 (citing *Lawhorn*, 843 S.W.2d at 270).  Applying this standard, the Fourth Court of Appeals observed that Warden Figueroa of the Estelle Unit testified that petitioner was in his custody on December 13, 1996, and that both inmate Carl Ogle and Sylvia J. Piasta, the Chief of Classification at the Estelle Unit, testified that petitioner was incarcerated at the Estelle Unit in December, 1996.  (*Id.*).  The record supports the Texas court's findings.  (Docket Entry No.8, part 13, page 15; part 13, page 28; part 14, page 2).

The evidence in this case is sufficient to support the state district court's judgment in this case under clearly established Supreme Court jurisprudence.  Accordingly, the Court will grant respondent's motion for summary judgment on this ground.

D.      Speedy Trial

Respondent moves for summary judgment on the ground that petitioner has not shown that the state court's adjudication of his speedy trial claim was unreasonable.  (Docket Entry No.19). Petitioner maintains that he repeatedly asserted his right to a speedy trial but trial was not set until after a hearing on his second motion to dismiss, which was filed almost four years after his arrest.

15

(Docket Entry No.1).  He claims that he suffered actual prejudice "due to the loss of three witnesses caused by the delay and the detainer lodged against him that affects his conditions of confinement." (*Id.*, page 12).

The Sixth Amendment guarantees a defendant in a criminal case the right to a speedy trial. U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 519- 22 (1972).  The Sixth Amendment right to a speedy trial does not attach until an individual becomes an "accused," which occurs with the initiation of criminal prosecution, whether by arrest, information, indictment, or other formal charge.  *Gravitt v. U.S.*, 523 F.2d 1211, 1216 (5th Cir. 1975) (citing *United States v. Marion*, 404 U.S. 307, 320-21 (1971)).  To determine whether a defendant's right to a speedy trial has been violated, the court must evaluate and balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay.  *United States v. Cardona*, 302 F.3d 494, 496 (5th Cir. 2002) (citing *Barker*, 407 U.S. at 530-33).  The "triggering mechanism" for the inquiry is the length of the delay.  *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003) (citing *Doggett v. United States*, 505 U.S. 647, 651 (1992)).  If the delay between the date of arrest or indictment and the date of trial is presumptively prejudicial, the court must make specific findings regarding the other three factors.  *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).  A one year delay is sufficient to warrant judicial examination of the claim.  *Serna-Villarreal*, 352 F.3d at 230.

In applying the *Barker* factors, the Court must weigh the first three factors, *i.e.*, the length of the delay, reason for the delay, and defendant's diligence in asserting his right, against any prejudice suffered by the defendant due to his delay in prosecution.  *Serna-Villarreal*, 352 F.3d at 230.  The defendant bears the burden of demonstrating prejudice, unless the first three factors weigh so heavily in favor of the defendant that prejudice may be presumed.  *Id.*  Three types of prejudice may result

from post-indictment delay:  (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired.  *Doggett*, 505 U.S. at 653.

In this case, petitioner was captured after the escape on December 23, 1996.  *Russell*, 90 S.W.3d at 870.  He was indicted for the offense of escape on December 10, 1997, but the indictment was dismissed after petitioner was diagnosed with a terminal illness.  *Id.* at 872; (Docket Entry No.8, part 11, page 2).  Petitioner was paroled to a nursing home on February 24, 1998, to receive treatment for the illness.  (Docket Entry No.1, page 33).  Petitioner violated the terms of his parole release and absconded to Florida.  (*Id.*; page 34; Docket Entry No.8, part 12, page 9).  Petitioner was re-indicted on April 28, 1998.  (Docket Entry No.8, part 12, page 2).  On May 13, 1998, the state district court requested legal representation for petitioner.  (Docket Entry No.8, part 36, page 29).  On May 18, 1998, the State announced that it was ready for trial and requested a trial setting.  (*Id.*, page 30).

In October of 1998, the State again attempted to proceed to trial.  (*Id.*, part 12, page 8).  Trial was not set because a long line of complex cases crowded the state court's docket.  (*Id.* pages 6, 8).  On October 26, 1998, petitioner, who was now represented by counsel, filed a *pro se* "Motion to Dismiss Indictment," asserting his rights to a speedy trial.  (*Id.*, part 36, pages 31-39).  No hearing was requested on the motion.

Thereafter, petitioner asserted his right to a speedy trial on November 3, 1998, and December 8, 1998.  (*Id.,* pages 40-41).  No hearings were requested and the state district court did not act on petitioner's assertions of his right to a speedy trial.

In May of 1999, a federal grand jury indicted petitioner on federal charges.  (Docket Entry No.8, part 12, page 3).  On May 13, 1999, petitioner again asserted his right to a speedy trial.  (*Id*., part 36, page 2).  In late June, 1999, he was bench-warranted to the U.S. District Court in Dallas, Texas.  (*Id.*, part 12, page 3).  In July, 1999, the State again attempted to set the case for trial.  (*Id*.,

page 6).  The case did not go to trial because petitioner was in federal custody.  (*Id.*).  After his conviction in federal court in September, 1999, petitioner remained in federal custody.  (*Id.*, page 3). In October, 1999, the State again attempted to set petitioner's case for trial.  (*Id.*, page 6).  On November 2 and 23, 1999, petitioner asserted his right to a speedy trial.  (*Id.*, part 36, pages 3-4). Because petitioner was still in federal custody, the State was unable to take him to trial in state court. (*Id.*, part 12, page 7).  In mid-March, 2000, petitioner was returned to state custody.  (*Id.*, part 37, page 41).  When the State officials attempted to locate petition in mid-May, 2000, they discovered that he had been returned to state custody.  (*Id.*, part 12, page 7).  Petitioner was informed that new counsel had been appointed to represent him in June, 2000.  (*Id.*, part 37, page 6).  On June 27, 2000, he filed a *pro se* "Advisory to the Court and Assertion for a Speedy Trial."  (*Id*., pages 6-7).  Trial was set for August, 2000.  (*Id.*, part 12, page 7).  On July 20, 2000, petitioner, through counsel, filed a "Second Motion to Dismiss Indictment," asserting his right to a speedy trial.  (*Id.*, part 37, pages 40-41; part 38, page 2).  After a hearing on petitioner's second motion, the state district judge denied his motion to dismiss the indictment on speedy trial grounds.  (*Id.*, part 12, page 10).

At the hearing on petitioner's Motion for New Trial, Prosecutor Kelly Weeks testified that she and petitioner's trial counsel, Cynthia Viol, agreed to try petitioner in October, 1999, but had to delay trial because petitioner was in federal custody.  (*Id.*, part 11, page 11).  She further attested that because of an overcrowded docket and the State Counsel requesting a number of conflict-of-interest hearings from November 1999 through January 2000, she was unable to set petitioner's case for trial. (*Id.*, pages 11-12).

The Fourth Court of Appeals analyzed petitioner's speedy trial claims under the *Barker* balancing test because of long delay between the indictment in April, 1998, and the trial on August 14, 2000.  *Russell*, 90 S.W.3d at 872.  The state appeals court noted that the record showed that "on

two separate occasions-October of 1998 and October of 1999-the trial was set, but did not go to trial because Russell was in federal custody." *Id.* Upon Russell's return to TDCJ, the prosecutor "was unable to set his case for trial until August, 2000 due to an overcrowded docket and conflict-of-interest hearings." *Id.* Based on this record, the state appellate court held that the "reasons offered by the State for the delay between Russell's indictment and trial are neutral and weigh, less heavily than if they were intentional, against the State." *Id.*

The record shows that petitioner's trial was delayed by the Court's failure to set a trial date after the State announced ready in May, 1998, and by an overcrowded docket in October, 1998. The State attempted to set the case for trial in July and October, 1999, but the case did not go to trial because petitioner was in federal custody. Upon his return to federal custody, the State was unable to set the case for trial until August, 2000 because of an overcrowded docket. The record reflects no evidence that the delay was a deliberate attempt by the State to hamper the defense. Thus, although the reason for the delay weighs against the State, it weighs less heavily than a deliberate delay. *Barker*, 407 U.S. at 531.

The Fourth Court of Appeals further found that petitioner sufficiently pursued his right to a speedy trial. *Russell*, 90 S.W.3d at 872. Thus, this factor weighs in his favor.

Petitioner claims that his defense was impaired by the delay in re-indicting him for the same offense because three defense witnesses were not available in 2000. (Docket Entry No.1). Delays prior to the initiation of criminal proceedings and before the statute of limitations has run are governed by the Due Process Clause of the Fifth Amendment. *Gravitt*, 523 F.2d at 1216 (citing *Marion*, 404 U.S. at 322-24). "Re-indictment on enhanced charges, however, except to the extent that it may involve one or more of the enumerated three types of prejudice an accused can suffer by delay, is not protected against by the speedy trial guarantee." *Id.* at 1216.

19

The Fourth Court of Appeals found no prejudice from the delay with respect to the missing witnesses[2] because petitioner failed to show that their testimonies were exculpatory or beneficial to his defense. *Russell*, 90 S.W.3d at 874.  Balancing the *Barker* factors, the Fourth Court of Appeals found that the first three factors weighed in petitioner's favor but that any presumption of prejudice was rebutted by petitioner's failure to demonstrate that he suffered any prejudice as a result of the delay. *Id.* at 874-75.  The Fourth Court of Appeals concluded that the state district court did not err in denying petitioner's motion for speedy trial.  *Id.*

Although petitioner complains in the pending petition that he was prejudiced by the loss of three witnesses, who were unavailable to testify because of the delay, petitioner identifies only one missing witness--his mother, who died in February, 1999.[3]  Petitioner does not identify any other witness and he does not proffer the content of his mother's testimony nor the testimony of any other missing witness.  *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (court cannot grant habeas relief unless petitioner makes affirmative showing of missing evidence or testimony). Therefore, he fails to establish that he suffered actual prejudice from the delay that allegedly resulted in a violation of his constitutional right to a speedy trial.  *See United States v. Crosby*, 713 F.2d 1066, 1078-79 (5th Cir. 1983) (speedy trial violation requires proof of actual, substantial prejudice or evidence of intentional, tactical delay by prosecution).  He also fails to show that the state court's determination that he suffered no prejudice from the delay and its finding that the state district court

---

[2]  On direct appeal, petitioner claimed that his mother died during the delay and that he was unable to locate a doctor who had diagnosed him with AIDS and a guard that had released him from prison. (Docket Entry No.8, part 2, pages 6-7).

[3]  In summarizing his testimony at the hearing on his motion for new trial, petitioner claims that he identified his mother as a missing witness.  He claims that he attested that her testimony would have been relevant to punishment.  (Docket Entry No.1).

did not err in dismissing his speedy trial claims contravene § 2254(d) that would entitle him to federal habeas relief.

Petitioner also fails to show that he was prejudiced by the "effects of a detainer on petitioner's conditions of confinement." (Docket Entries No.1, No.20).

Accordingly, respondent is entitled to summary judgment on this claim.

E.     Ineffective Assistance of Counsel

Petitioner contends that he was deprived of the effective assistance of counsel at trial because during the punishment phase of trial, his trial counsel failed to object to the admission of evidence of numerous extraneous offenses. (Docket Entry No.1). Respondent moves for summary judgment on the ground that petitioner has not shown that the state court's adjudication of his ineffective-assistance-of-counsel claim was unreasonable. (Docket Entry No.19).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v.*

21

*Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  The Texas Court of Criminal Appeals denied petitioner's claim in his state writ application without written order.  (Docket Entry No.8, part 19, page 34); *Ex parte Russell*, No.29,412-08 at cover.  "Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  Having independently reviewed petitioner's claims in conjunction with the state

court records, the Court finds that the adjudication of his claims do not appear to have resulted in a decision that was contrary to or involved an unreasonable application of the *Strickland* standard for the reasons to follow.

Petitioner contends the representation of his trial counsel, E.G. "Gail" Huff, was constitutionally ineffective because she failed to object during the punishment phase of trial to the testimony of John Moriarty, the Chief of Operations for the Office of Inspector General of TDCJ. (Docket Entry No.1).  Petitioner claims that Moriarty's testimony regarding petitioner's criminal history was inadmissible under Rule 602 of the Texas Rules of Evidence, which prohibits a witness from testifying to a matter without evidence sufficient to support a finding that the witness has personal knowledge of the matter.  (Docket Entry No.1).  He also complains that Huff was ineffective because she failed to request a limiting instruction or a hearing outside the jury's presence regarding the admissibility of Moriarty's testimony.  (*Id.*).  Petitioner claims there can be no conceivable trial strategy in allowing the admission of such testimony.  (*Id.*).

Petitioner specifically complains of the following testimony, given in response to questioning by Huff, regarding whether Moriarty would prefer to have as a neighbor a con man or an aggravated robber.  (*Id.*; Docket Entry No.8, part 14, page 28).  Moriarty testified as follows, in pertinent part:

> Well, I think, as far as a - a crook is a crook is a crook.  You know, I wouldn't want either one of them living next door to me.  But I think what he does - what he's done in the past is more damaging than sticking a gun in somebody's face would be.  It causes some of the people involved to have lifetime problems.  And that isn't always the case when a guy goes into a 7-Eleven and sticks a gun in somebody's face.
>
> Q.   (by Ms. Huff) So you're saying you consider an embezzler or a con man to be more dangerous and cause more harm to society than someone who sticks a gun in your face and takes your money?
>
> A.   I'm talking about this person sitting right there.  I'm not talking about person in general.  I know what his past is.  I've read cases on him.  I know what he's all about.  And he has caused untold amount of problems with people that

> have been in his life, as far as the credit problems that he causes for them by
> assuming their identities.  I mean, things that have to be cleaned – things it
> takes years to clean up.

(*Id.*, page 28).

Respondent claims that in eliciting such testimony, Huff was employing a trial strategy to show jurors that petitioner had not committed a violent crime and therefore, would not pose a danger to the community.  The Court agrees.  Huff's questioning and her closing argument reflect such strategy.  (Docket Entry No.8, part 15, page 23).  Petitioner fails to show that his trial counsel's strategy was unsound or constituted deficient performance.  *See Strickland*, 466 U.S. at 689.

Petitioner also fails to show that Huff did not object to Moriarty's testimony on the ground that he lacked personal knowledge.  In response to the prosecutor's question about petitioner's problems and his criminal history, Moriarty testified as follows, in pertinent part:

> A.   In the bank fraud case he [petitioner] assumed an individual's identity out of
>      Virginia and ruined his credit – pretty much ruined it.  He purchased items
>      from numerous businesses that – under fictitious – under his fictitious names
>      and just pretty much wrecked that gentleman's credit history.

> \*   \*   \*   \*   \*   \*

> Q.   Mr. Moriarty, tell the jury what your investigation revealed when you said he
>      was released on Special Needs Parole fraudulently.

> A.   We handled it as an escape after being notified by the Parole Division that he
>      had been released – our investigation disclosed that the defendant had set up
>      numerous answering services under fictitious names of doctors and attorneys
>      and he had obtained bar cards, visited a co-defendant on his instant offense,
>      and one of his –

> MS. HUFF:   Your honor, I object to this unless he has evidence to prove this.  I
>             mean, he can't just sit up there and speak all day long, accusing
>             someone, without evidence.

(*Id.*, page 29).  The Court overruled the objection and Moriarty testified about Special Needs Parole, as follows:

A.    Special Needs Parole is a program – it's a program that has been set up to allow inmates that are dying from terminal illness, within a short period of time of their expected death to either – to go back – to either parole home or parole now to a nursing home.

And it was at this time that he was paroled out to this nursing home. But the investigation revealed that he fictitiously released, had special treatments down in Houston. That doctor was interviewed and stated that he was not involved with this gentleman. And the release itself was based on the doctor's evaluation of medical records that we found to be counterfeited – forged documents that we found – it was basically on blood tests that was done regarding white blood cell counts.

Q.    Counterfeited as far as – TDC thought he was going to die of AIDS, correct?

A.    That's correct. . . .

\*    \*    \*    \*    \*    \*

A.    And then, from there he had set up this advanced treatment – supposedly advanced treatment with a doctor in Houston, which was all fictitious, and found an apartment in Galveston, ordered a bunch of furniture at Gallery Furniture. And we ended up returning that stuff. And from there he continued to run – he obtained a couple of different bar cards under a couple of different attorneys' identities.

(*Id.*, pages 29-30). Thereafter, Huff again objected to Moriarty testimony about extraneous offenses without evidence to support it. (*Id.*, page 30). In response to Huff's questioning, Moriarty opined that he believed that petitioner was not ill with AIDS and that petitioner had self-induced his weight loss and falsified his medical records. (*Id.*). Moriarty further attested under questioning that he was aware of other indictments that were dismissed out of Pennsylvania. (*Id.*, page 31). Huff requested that Moriarty's entire testimony be stricken and the jury instructed to disregard it because he made allegations without any proof. (*Id.*). The state district court overruled the objection. (*Id.*).

The State later offered evidence of petitioner's 1996 escape conviction and his 1996 conviction for aggregate theft, which the state district court admitted without objection. (*Id.*, part 14, page 39; part 19, pages 6-25). Huff objected when the State attempted to introduce evidence of

25

petitioner's conviction in Virginia, and the state district court did not admit such evidence.  (*Id.*, part 14, page 39).

In her closing argument, Huff argued to the jury that Moriarty had testified about extraneous acts without evidence to support his testimony.  (Docket Entry No.8, part 15, page 22).  She challenged the jury to assess punishment appropriate to the offense that he committed and not to the attitude of Moriarty.  (*Id.*).

The record, nevertheless, shows that Huff did not make a contemporaneous objection to Moriarty's testimony regarding petitioner's extraneous offense that was allegedly committed in Virginia, but her objection to evidence establishing such conviction thwarted the admission of the same.[4]  The record also shows that Huff voiced a contemporaneous objection to Moriarty's testimony regarding Special Needs Parole on the ground that the State had failed to show that Moriarty had personal knowledge of the same, but the objection was overruled.  The record further shows that Huff used every opportunity, thereafter, when cross-examining Moriarty to show that he lacked personal knowledge of the events to which he testified and that he lacked the professional qualifications to testify to other statements regarding petitioner's health.  She argued the same in her closing argument.

In habeas actions, federal courts do not sit to review the mere admissibility of evidence under state law or errors under state law.  *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).  Erroneously admitted evidence will mandate habeas relief only when the error violates the federal constitution or is so extreme that it constitutes a denial of fundamental fairness.  *Id.* at 862.  The latter requires that the wrongly admitted evidence play a crucial, critical, and highly significant role in the trial.  *Id.*

---

[4]  The record does not reflect that evidence of the conviction was admitted.  (Docket Entry No.8, part 11, page 22-23) (exhibit index).

In this case, petitioner makes no showing that Moriarty's testimony played a crucial, critical, and highly significant role in the trial; therefore, he fails to show that the admission of such testimony violates due process.  Moreover, the record does not support petitioner's allegations that trial counsel Huff failed to object to all aspects of Moriarty's testimony.   Although the record shows that petitioner's Huff did not object to Moriarty's testimony regarding the Virginia conviction, petitioner fails to show that her performance was deficient in light of her objection that prevented the admission of a pen packet supporting Moriarty's testimony.  Furthermore, he fails to show that but for Huff's failure to voice such an objection to Moriarty's testimony, the outcome of the trial would have been different.  *See Strickland*, 466 U.S. at 692.  Accordingly, petitioner has not shown that the state courts unreasonably applied federal law in rejecting his ineffective-assistance claim.  *See* 28 U.S.C. § 2254(d)(1).  Respondent is entitled to summary judgment on petitioner's ineffective assistance of counsel claim.

IV.   <u>CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001.  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or

argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth in the Opinion on Dismissal, the Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right, and so a certificate of appealability from this decision will be denied.

V.    <u>CONCLUSION</u>

Based on the foregoing, the Court ORDERS the following:

1.    Respondent's motion for summary judgment (Docket Entry No.19) is GRANTED.

2.    Petitioner's motion for an evidentiary hearing (Docket Entry No.20) is DENIED. Petitioner does not show that he failed to develop a claim in state court that relies on a new rule of constitutional law or on a "factual predicate that could not have been previously discovered through the exercise of due diligence," or that he is actually innocent.  *See Williams v. Taylor*, 529 U.S. 420, 433-37 (2000); 28 U.S.C. § 2254(e)(2).

3.    A certificate of appealability is DENIED.

4.    All other pending motions, if any, are DENIED.

The Clerk shall send a copy of this order to the parties.

Signed at Houston, Texas, this 31st day of January, 2007.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE